UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JANDA GRACE MCBETH,

      Plaintiff,

v.                                        Case No: 8:14-cv-606-T-36AEP

CREDIT PROTECTION ASSOCIATION,
L.P.,

      Defendant.
_____/

## ORDER

This cause comes before the Court upon Defendant Credit Protection Association, L.P.'s ("CPA") Motion for Partial Summary Judgment (Doc. 93), as well as Plaintiff Janda Grace McBeth's Corrected/Amended Motion for Partial Summary Judgment (Doc. 103). Each party responded in opposition to the other's Motion (Docs. 111 and 110, respectively). CPA replied in further support of its Motion (Doc. 113). McBeth sought and obtained leave to file a reply in further support of her Motion, but the time to file a reply has now expired and she has failed to do so. The Court, having considered the parties' submissions and being fully advised in the premises, will now GRANT-IN-PART and DENY-IN-PART CPA's Motion, and GRANT-IN-PART and DENY-IN-PART McBeth's Motion.

## I.  STATEMENT OF FACTS[1]

This action arises out of a series of debt collection calls placed by CPA to McBeth's cellular telephone number in its efforts to collect a debt allegedly owed by an individual named "Tommy Mitchell," originally owed to Bright House Networks, Doc. 98 ("Evans Dep. I") at 77-79. CPA is

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, stipulated facts, affidavits, and deposition testimony.

a licensed third party collection agency that primarily collects consumer accounts, including cable, utility, and toll fines, but also collects a "very minor amount" of commercial accounts. Evans Dep. I at 15; Doc. 99 ("Evans Dep. II") at 7; Doc. 100 ("Evans Dep. III") at 15. McBeth is, and has been, the owner, regular user, and subscriber of the cellular telephone number at issue for at least the past five years. Doc. 97 ("McBeth Dep.") at 40. In a case of mistaken identity, McBeth was never actually obligated to pay the amount CPA was attempting to collect when it placed calls to her regarding the "Tommy Mitchell" debt. Doc. 115 ¶ 1.

The first of these debt collection calls occurred in March 2013, McBeth Dep. at 28, and such calls continued over the next eight months, until November 2013, after which time CPA ceased calling McBeth, Doc. 115 ¶ 9. Each of the calls CPA placed to McBeth used a prerecorded message. Evans Dep. I at 93. As will be discussed in detail below, the number of these calls, as well as whether McBeth ever actually spoke to any of CPA's representatives regarding these calls, is in dispute.

The operative complaint[2] asserts that CPA's debt collection calls violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") (Count I); Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") (Count II); and Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA") (Count III).

McBeth now moves for summary judgment as to liability, statutory damages, and treble damages for Count I; and CPA moves for summary judgment as to treble damages for Count I, and liability for Counts II and III.

---

[2] The operative complaint is the Fifth Amended Complaint (Doc. 85).

## II.      STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact.  *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).  That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact.  *Id.* at 324.  Issues of fact are "genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party.  *Celotex*, 477 U.S. at 323.  However, a party cannot defeat summary judgment by relying upon conclusory allegations.  *See Hill v. Oil Dri Corp. of Ga.*, 198 Fed. App'x 852, 858 (11th Cir. 2006).

## III.      DISCUSSSION

### A.      Count I:  TCPA

The TCPA prohibits any person from "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any

automatic telephone dialing system [("ATDS")] or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). A party who is contacted in violation of the TCPA may recover, for each such violation, the greater of his or her actual monetary losses or $500 in damages, *see* 47 U.S.C. § 227(b)(3)(B), and may recover treble damages for any knowing or willful violations, *see* 47 U.S.C. § 227(b)(3)(C).

      *1.     Liability*

McBeth argues first that she is entitled to judgment as a matter of law that each of CPA's calls to her violated the TCPA. The Court agrees. It is undisputed that CPA placed calls to McBeth using an artificial or prerecorded voice;[3] that these calls were not made for emergency purposes or with McBeth's prior express consent; and that these calls were placed to McBeth's cellular telephone. McBeth is therefore entitled to summary judgment as to liability for Count I. *Accord Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316 (S.D. Fla. 2012), *aff'd* 755 F.3d 1265 (11th Cir. 2014).

      *2.     Statutory Damages*

CPA admits that, in accordance with its call log, it placed 30 calls to McBeth's cellular telephone in its attempts to reach "Tommy Mitchell." McBeth, however, argues that she is entitled to recover statutory damages for 76 calls, because that is the number of calls that she testified that she received. McBeth adds that CPA testified that it may have placed more calls to her than it

---

[3] McBeth contends that the calls were made using an ATDS, and CPA disputes this assertion. However, the Court need not (and does not) reach this question, because CPA concedes that all the calls it placed to McBeth's cellular telephone number were made using a prerecorded voice. *See* Doc. 110 at 13 ("Defendant does not dispute that the calls were made using a prerecorded message").

logged,[4] and points to a screenshot of her cellular telephone that she claims depicts a call that she received from CPA but that did not appear in CPA's call log.

CPA disputes that it placed 76 calls to McBeth.  Rather, according to CPA, the only calls it placed to McBeth are those it logged, which total only 30 in number.  In support of its figure, CPA contends that McBeth's counting protocol is arbitrary and illogical, and resulted in rampant duplicative counting, for example, by counting as separate calls a single call that was recorded by different entities as occurring at slightly different (or even the same) times, when any purported differences in the times logged for the call simply reflect differences in each entity's call-logging protocol or clock synchronization.  CPA asserts also that McBeth's cell phone screenshots reflect only 30 calls, and that the only screenshot that does not align with CPA's call log is actually an *outgoing* call that McBeth made to CPA.

After considering the parties' arguments, the Court finds that McBeth is not entitled to judgment as a matter of law that CPA placed 76 calls to her.  Indeed, viewing the facts and inferences in the light most favorable to CPA, a reasonable factfinder could very easily and readily conclude that many of the "calls" McBeth counts separately actually reflect but a single call.  The Court today does not, and cannot, resolve which (if any) of the separately counted "calls" are duplicative, but holds only that, as to whether the number of calls CPA placed to McBeth is

---

[4] It appears that CPA may also have called McBeth regarding a separate collection account under McBeth's name that had been placed with CPA.  Evans Dep. I at 89.  However, CPA contends that such testimony is factually erroneous and that it never placed any calls to McBeth with the intent of contacting her, *see* Doc. 94-1 at Errata, and McBeth does not identify any calls that actually sought her and not "Tommy Mitchell."  Accordingly, the Court finds that all of CPA's calls were placed for "Tommy Mitchell."

actually 76 or some other number, there is a genuine dispute that must be resolved by the trier of fact.[5]

                *3.*     *Treble Damages*

Both parties argue that they are entitled to summary judgment with regard to treble damages for "knowing" or "willful" violations of the TCPA.  McBeth argues that "knowing" or "willful" should be evaluated under the same standard as recklessness, and that, under this standard, CPA's TCPA violations were willful or knowing as a matter of law.  In support of her assertion, McBeth notes that:  (1) CPA has been sued for alleged violations of the TCPA nearly 40 times since 2011, approximately half of which allege facts nearly identical to those here; (2) despite being sued for violating the TCPA on so many occasions, CPA maintained no written policies or procedures relating to the TCPA; (3) CPA has means by which it can identify whether a call is being placed to a cellular telephone number, but chooses not to use this technology for numbers it receives from original creditors; and (4) CPA has the responsibility to determine whether the numbers it obtains actually belong to the account debtor.

CPA, on the other hand, argues that McBeth must establish that CPA knew (or should have known) that it was calling the wrong person, and further contends that the evidence is undisputed that CPA did not know that it was calling a cellular telephone or that it was calling the wrong person.  CPA adds that although McBeth testified that she informed CPA's representative that she was not "Tommy Mitchell" and that she did not consent to being called, the Court should disregard her self-serving testimony because there is no documentary evidence supporting her testimony.

---

[5] To the extent that CPA suggests that it is entitled to judgment as a matter of law that it made only 30 calls to McBeth, *see, e.g.*, Doc. 93 at 19, its motion is also denied.

CPA finally notes that the fact that it has been sued under the TCPA in other cases is not dispositive of the fact that it acted knowingly or willfully here.

After careful consideration, the Court finds that neither party is entitled to summary judgment.  To begin with, "knowing" or "willful" requires more than a showing of recklessness. Indeed, as the Eleventh Circuit has specified, "[t]he requirement of 'willful or knowing' conduct requires the violator to know he was performing the conduct that violates the statute." *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) (alterations and citation omitted); *see also id.* ("If we interpreted the statute to require only that the violator knew he was making a 'call,' . . . the statute would have almost no room for violations that are *not* 'willful or knowing.'") (alterations omitted).  Accordingly, to establish a "knowing" or "willful" violation under the TCPA, a plaintiff must prove that the defendant knew, for example, that it did not have consent to call the plaintiff's cellular phone number.  *See, e.g.*, *Harris v. World Fin. Network Nat'l Bank*, 867 F. Supp. 2d 888, 895 (E.D. Mich. 2012).[6]

Under this standard, McBeth must establish that CPA knew, *inter alia*, that it was calling a cellular telephone, and that the person whom it was calling did not consent to being called. Herein arises a genuine issue of material fact:  McBeth testified that she verbally informed CPA on several occasions to stop calling her cell phone, McBeth Dep. at 82-84, and CPA claims that it has no record of any such request, Doc. 93-1 ("Evans Decl.") ¶ 9.  Although the Court agrees with CPA that conclusory, self-serving, or uncorroborated allegations will not overcome a motion for summary judgment, McBeth's testimony cannot be fairly characterized as such.  Not only has

---

[6] To the extent that *Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030, 1044 (D. Minn. 2010), suggests that a showing of mere recklessness is sufficient, the Court declines to extend its holding here, because doing so would be inconsistent with the Eleventh Circuit's clear and unambiguous language in *Lary*, which this Court is bound to follow.

McBeth testified as to the specific dates on which she allegedly spoke with CPA's representative, *see, e.g.*, McBeth Dep. at 83 (testifying that she spoke to CPA's representative on March 25, 2013), according to CPA, one of the screenshots on McBeth's cellular telephone depicts an *outgoing* call to CPA, *see* Section III.A.2, *supra*.

Conversely, none of the points raised by McBeth are sufficient to establish, as a matter of law, that CPA knowingly or willfully violated the TCPA.  CPA's prior violations of the TCPA do not mandate a finding of knowledge or willfulness, *see, e.g.*, *Levy v. Receivables Performance Management, LLC*, 972 F. Supp. 2d 409, 425 (E.D.N.Y. 2013) ("the fact that [the defendant] has been found to have violated the TCPA in other instances does not suggest, as a matter of law, that they acted knowingly and willfully when they used their ATDS to place calls to plaintiff's cell phone"), and, as discussed above, there is a genuine dispute whether McBeth actually spoke with CPA's representative.

The finder of fact must resolve whether and, if so, precisely when McBeth first informed CPA that she was not "Tommy Mitchell" and requested that CPA cease calling her.  *See Coniglio v. Bank of Am., N.A.*, Case No. 14-cv-1628, 2014 WL 5366248, at *4 (M.D. Fla. Oct. 21, 2014) ("each call placed by Defendant after the Plaintiffs instructed Defendant that it does not have consent to call the Plaintiffs' respective cellular telephone numbers constitutes a 'willful' and/or 'knowing' violation warranting the trebling of the award").  Accordingly, both parties' motions for summary judgment as to this aspect of McBeth's TCPA claim are due to be denied.

## B.    Count II:  FDCPA

"The Fair Debt Collection Practices Act was enacted by Congress 'to eliminate abusive debt collection practices by deb collectors' and 'to protect consumers against debt collection abuses.'"  *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1352 (11th Cir. 2009)

(quoting 15 U.S.C. § 1692(e)).   As such, the FDCPA broadly prohibits debt collectors from engaging in harassing, oppressive, or abusive conduct, from using false, deceptive, and misleading misrepresentations, or from collecting debts using unfair or unconscionable means.  *See* 15 U.S.C. §§ 1692d, 1692e, 1692f.

### 1.    *Consumer Debt*

To recover under the FDCPA, the allegedly unlawful activity must, as a threshold matter, arise out of a qualifying "debt."  Specifically, the FDCPA applies "only to payment obligations of a (1) *consumer* arising out of a (2) *transaction* in which the money, property, insurance, or services at issue are (3) *primarily for personal, family, or household purposes*."  *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 838 (11th Cir. 2010) (emphases in original).

CPA argues that McBeth cannot establish that the debt at issue was a consumer debt.  In support of its argument, CPA notes that it was not advised by Bright House whether the "Tommy Mitchell" account was a personal or a business account; that CPA collects business debts; and that the address on the "Tommy Mitchell" account is zoned as a business property.  In response, McBeth claims that she has adduced evidence that would establish that the debt was not a business debt—namely, that the "Tommy Mitchell" account is in the name of an individual (as opposed to a business); and that CPA has a social security number, rather than an Employer Identification Number, associated with the account.  McBeth asserts that, if the account had been a business account, it would have been impossible for "Tommy Mitchell" to use his name and personal social security number.

The Court begins by noting that neither party offers strong evidence in support of their respective positions.  This is concerning to the Court, because such evidence—for example the relevant Bright House work order or testimony from a Bright House representative—does not

appear to be especially difficult to obtain.  McBeth faults CPA for not producing such documents despite it having done so in other similar litigations, but her criticism is not well-taken.  The burden is on *McBeth* to establish each of the elements of her claim, and such evidence would be as readily available to her as it would be to CPA.

Nevertheless, after viewing all the facts in the light most favorable to McBeth and drawing all reasonable inferences in her favor, the evidence set forth by McBeth is sufficient, barely, to survive summary judgment.  Specifically, the lack of any business name or business identification number associated with the "Tommy Mitchell" account, coupled with the fact that CPA collects primarily consumer debts, allows the Court to infer that the "Tommy Mitchell" debt was for personal purposes.  *Accord Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 257 (S.D.N.Y. 2011) (inferring that the debt in question was for personal purposes where the evidence established that the defendant specialized in retail collection; that the debt was for a cell phone account; and the debtor was an individual living in an apartment building); *but see Anderson v. AFNI, Inc.,* Case No. 10-cv-4064, 2011 WL 1808779, at *14 (E.D. Pa. May 11, 2011) (declining to infer that the debt in question was for personal purposes despite evidence that the actual debtor was an individual; the addresses associated with the debts at issue were residential; and the defendant treated the debts as if they were consumer debts).

The Court, therefore, will deny CPA's motion for summary judgment as to this element.

### 2.   *15 U.S.C. § 1692d(5)*

Section 1692d(5) prohibits a debt collector from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."  CPA argues that it is entitled to summary judgment as to this section because there is no evidence that it intended to harass, oppress, or abuse McBeth, or

that it called with excessive frequency under the circumstances.  In support of its position, CPA asserts that it never knew that it was calling the wrong person, and that it called McBeth only 30 times in the entire eight-month period over which the allegedly unlawful calls were made.

The Court is not persuaded, because CPA's argument hinges on its self-serving view of the disputed facts.  Importantly, as discussed above in Sections III.A.2 and III.A.3, *supra*, the Court cannot find, as a matter of law, that CPA did not know that it was contacting the wrong party or that it made only 30 calls to McBeth.  Rather, when the evidence is viewed in the light most favorable to McBeth, there is a genuine dispute whether CPA called McBeth with an intent to annoy, abuse, or harass her.  Specifically, under McBeth's version of the facts, she informed CPA as early as *March 25, 2013*, and on a total of at least four occasions, that it was calling the wrong party and requested that the calls cease, but despite this notice and request, CPA continued to periodically call her over the next eight months, up to five times in short succession on a single day.  Such actions, if true, would support an inference of an intent to harass, oppress, or annoy. *See Lardner v. Diversified Consultants, Inc.*, 17 F. Supp. 3d 1215, 1225 (S.D. Fla. 2014) ("Summary judgment is denied where the call recipient shows evidence of a high call volume coupled with the debt collector ignoring requests to cease communications . . . .").

For the reasons stated above, the Court will deny CPA's motion for summary judgment as it pertains to this provision.

### 3.   *15 U.S.C. § 1692d(6)*

Section 1692d(6) prohibits a debt collector from placing telephone calls "without meaningful disclosure of the caller's identity."  CPA argues that it is entitled to summary judgment as to this section because each of the messages McBeth received in her voicemail box unambiguously identified CPA by name. *See, e.g.*, Doc. 31-2 ¶ 20.  CPA notes also that it clearly

11

identified itself in the messages McBeth heard when she answered calls from CPA's number.  *See* Doc. 111-1 ("McBeth Aff.") ¶ 4.  In response, McBeth claims that on several occasions after answering a call from CPA, she heard nothing but dead air followed by termination of the call.  Thus, according to McBeth, as noted by the court in *Sussman v. I.C. Sys., Inc.*, 928 F. Supp. 2d 784, 794 (S.D.N.Y. 2013), common sense dictates that such behavior constitutes placing a call without meaningful disclosure of the caller's identity.

After careful consideration, the Court finds that CPA is entitled to summary judgment as to this provision.  Critically, the only evidence offered by McBeth in support of her claim that she sometimes heard only dead air upon answering a call from CPA is a single sentence in her affidavit stating, verbatim, that "on several occasions, I would answer calls on my cell phone from CPA and hear nothing but dead air, followed by the termination of the call."  McBeth Aff. ¶ 6.  McBeth does not provide any context or details regarding these alleged occurrences, such as on which specific calls she heard nothing but dead air, or even roughly how many instances of dead air she heard.  Standing alone, this conclusory, self-serving allegation is insufficient to create a genuine issue of material fact at the summary judgment stage.  *See Smith v. HCA, Inc.*, Case No. 03-cv-754, 2005 WL 1866395, at *3 (M.D. Fla. July 26, 2005) ("Conclusory, self-serving, or uncorroborated allegations in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported [motion for] summary judgment . . . .").[7]

---

[7] Having found the factual evidence offered by McBeth to be insufficient as a matter of law, the Court therefore need not (and does not) address the holding in *Sussman*.

4.      15 U.S.C. § 1692e(11)

In her response to CPA's motion for summary judgment, McBeth agrees to withdraw her claim under 15 U.S.C § 1692e(11).  *See* Doc. 111 at 14.  Accordingly, the Court need not address CPA's motion for summary judgment as it relates to this section.

5.      15 U.S.C. § 1692f

Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."  CPA argues that it is entitled to summary judgment as to this section because there was nothing deceptive, misleading, or unconscionable about its calls to McBeth.  CPA notes that it was clear in its messages to McBeth that it was calling in regard to a debt owed by "Tommy Mitchell," and that it never improperly contended that McBeth was obligated to pay the "Tommy Mitchell" debt.  *See* McBeth Dep. at 21-22.  McBeth argues that CPA violated this provision when CPA called her repeatedly after she specifically informed it that it had the wrong number and requested that it not call her again.

The Court agrees with CPA's arguments.  Critically, although "the phrase 'unfair or unconscionable' is as vague as they come," evaluating fairness and unconscionability "necessarily include[s] inquiry regarding deceptiveness," and is dependent on the "'means' employed by the debt collector and the debtor's reaction to said means."  *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200, 1201 (11th Cir. 2010) (quotation marks, citations, and alterations omitted).  Here, there is no indication that CPA's behavior was deceptive, or that McBeth was in any way deceived by it.  Indeed, it is undisputed that CPA never misrepresented its identity or the identity of the person from whom it was attempting to collect the debt, and there is no evidence that McBeth ever actually misunderstood these facts.  Moreover, the specific practice about which McBeth complains—namely, CPA repeatedly calling her despite being informed that she was not the

13

debtor—is not of the type that is inherently "unfair" or "unconscionable." *Compare* 15 U.S.C. § 1692f(1) to (8) (providing examples of "unfair or unconscionable means," such as "[t]he solicitation . . . of any postdated check . . . for the purpose of threatening or instituting criminal prosecution," or "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral").[8]

The Court, therefore, will grant CPA's motion for summary judgment as to this section.

6.     *Bona Fide Error*

The FDCPA permits a debt collector to avoid liability "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).  To avail itself of this defense, a debt collector must show that its violation of the FDCPA "(1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error."  *Edwards*, 584 F.3d at 1352-53.  CPA argues that it is entitled to the bona fide error defense as a matter of law because it has a written policy of not calling a debtor after a verbal cease and desist, and its employees are trained in accordance with this policy.  CPA adds that it has no record of any verbal request to cease contact, that McBeth did not send a written cease and desist letter, and that it did not know that it was calling the wrong person.

The Court is not persuaded.  To begin with, a party's intent and whether its error was "bona fide" are "classic issues of fact" that are generally inappropriate for resolution at summary

---

[8] To the extent the specific behavior described by McBeth in support of her Section 1692f claim is prohibited by the FDCPA, it appears that Section 1692d(5) is the appropriate vehicle for bringing such a claim. *See* Section III.B.2, *supra*.

judgment. *Niven v. Nat'l Action Fin. Servs., Inc.*, Case No. 07-cv-1326, 2008 WL 4190961, at *3 (M.D. Fla. Sept. 10, 2008). Moreover, CPA's argument hinges primarily on its self-serving characterization of the disputed facts. *See* Section III.B.2, *supra*. However, for the same reasons discussed in Section III.B.2, *supra*, when viewing the disputed facts in the light most favorable to McBeth, it is clear that CPA is not entitled to summary judgment as to the bona fide error defense. *Compare Rhinehart v. CBE Grp., Inc.*, 714 F. Supp. 2d 1183, 1185 (M.D. Fla. 2010) (finding that the defendant was entitled to the bona fide error defense as a matter of law for violating the FDCPA by communicating to a third party, because the third party was the plaintiff's father, it was undisputed that the plaintiff had been living with her father for about 12 months in the past two to three years, and a Lexis Nexis Accurint search produced the plaintiff's father's telephone number).

## C.       Count III: FCCPA

The FCCPA permits a "debtor" to bring a civil action against a person who violates the statute's provisions. Fla. Stat. § 559.77(1). Unless the context otherwise indicates, a "debtor" is defined as "any natural person obligated or allegedly obligated to pay any debt." Fla. Stat. § 559.55(8). CPA argues that it is entitled to summary judgment as to McBeth's FCCPA claims because McBeth is not a "debtor" as defined by the FCCPA, and thus lacks standing to bring such claims. The Court agrees.

To begin with, it is undisputed that McBeth was not actually obligated to pay the "Tommy Mitchell" debt. Further, the Court finds that there is no genuine dispute that McBeth also was not "allegedly obligated" to pay the "Tommy Mitchell" debt. In determining whether a plaintiff was "allegedly obligated" to pay a debt, the question is whether the defendant communicated to the plaintiff (or otherwise implied) that she was obligated. *See Fini v. Dish Network L.L.C.*, 955 F. Supp. 2d 1288, 1298 (M.D. Fla. 2013). Thus, for example, if a debt collector states in a message

to a called party that the recipient of the message is obligated to pay the debt, the called party has standing to bring claims under the FCCPA.  *See id.*  Similarly, if a debt collector places a call to a party in a mistaken attempt to collect a debt from a third party that has the same name as the called party, the called party qualifies as an "alleged debtor" under the FCCPA.  *See Desmond v. Accounts Receivable Management, Inc.*, 72 So. 3d 179, 180-81 (Fla. 2d DCA 2011).

Here, unlike *Fini* and *Desmond*, there is no evidence that CPA ever indicated to McBeth that she was obligated to pay any debt.  Indeed, it is undisputed that each of the messages left by CPA sought to collect a debt from a third party named "Tommy Mitchell," and that "Tommy Mitchell" was not in any way associated with McBeth.  Therefore, as a matter of law, McBeth cannot be an alleged debtor.  *Accord Smith v. Markone Fin., LLC*, Case No. 13-cv-933, 2015 WL 419005, at *5 (M.D. Fla. Feb. 2, 2015) (finding that the plaintiff was not a "debtor" under the FCCPA because the defendant never stated or implied that the plaintiff owed or was obligated to pay any money and indicated only that it was looking for a third party).

McBeth argues that she nevertheless qualifies as an alleged debtor because she was made to feel obligated to pay the "Tommy Mitchell" debt when CPA continued to call her even after she told CPA that it had the wrong number.  The Court disagrees.  Here, at the summary judgment stage, it would be unreasonable to infer from the mere fact that CPA continued to call McBeth that CPA was somehow communicating to McBeth that she was obligated to pay the debt, especially where it is undisputed that the messages unequivocally sought to collect the debt only from a third party unaffiliated with McBeth.  And, as the court in *Smith* noted, "[a plaintiff's] feelings are not important . . . as they do not indicate whether [the defendant] alleged that [the plaintiff] was obligated."  2015 WL 419005 at *5 n.3.

Because McBeth was not obligated to pay the debt, and CPA never communicated to McBeth that she was obligated to pay the debt, McBeth lacks standing to bring her FCCPA claims. The Court, accordingly, will grant CPA's motion for summary judgment as to Count III.

## IV.    CONCLUSION

After a careful review of the record, the Court finds that there remain genuine issues of material fact, such as the number of calls CPA made to McBeth and whether McBeth ever informed CPA that she was the wrong party and requested that the calls cease.  On the other hand, there is no dispute as to the content of the messages sent by CPA to McBeth, or that each of the messages used a prerecorded voice.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.    CPA's Motion for Partial Summary Judgment (Doc. 93) is **GRANTED-IN-PART** and **DENIED-IN-PART**;

2.    CPA is entitled to judgment as a matter of law as to all of Count III, and Count II to the extent it alleges violations of 15 U.S.C. §§ 1692d(6) and 1692f; and

3.    CPA's Motion is otherwise **DENIED**.

4.    McBeth's claim for damages under Count II, brought pursuant to 15 U.S.C. §1692e(11) is withdrawn.

5.    McBeth's Corrected/Amended Motion for Partial Summary Judgment (Doc. 103) is **GRANTED-IN-PART** and **DENIED-IN-PART**;

6.    McBeth is entitled to judgment as a matter of law that each of CPA's calls to her violated the TCPA; and

7.    McBeth's Motion is otherwise **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on July 20, 2015.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any